Good morning. Please be seated. We have six appeals this morning. Four of them will be argued. Two of them are submitted on the briefs. The first appeal that will hear argument in this morning is docket number 23-1796. This is U.S. Well Services, LLC v. Stewart. Mr. Dowd, please begin when you're ready. Thank you, Judge Chen. Good morning, Your Honors. May it please the Court. As the Court knows, the invention at issue is directed to a novel hydraulic fracturing method and system. And what I'd like to do with my time this morning is focus on the key limitation in the claimed invention, which is the variable frequency drive, the VFD. And as claimed, the VFD requires two functions. It has to control the speed of the electric motor and it also has to conduct electric motor diagnostics in order to prevent damage. Our position has been that nowhere in the record is there any disclosure with respect to the two key prior references, the prior reference and the Sanborn reference. There's no disclosure of a VFD that performs the diagnostics. What about Broussard? Your Honor, that's a very good question. And that's why for today, I'd like to focus... There's no dispute that Broussard teaches the VFD that controls motor speed and performs motor diagnostics. Is that right? Correct, Judge Chen. And if I could, what I'd like to focus on today, Broussard, as presented by Halliburton and as decided by the Board, doesn't apply to Claims 11 through 14. So I'd like to really focus on Claims 11 through 14 because those are specific to the prior... Well, was that argued in your briefing that you wanted to, I don't know, limit the understanding of Broussard to just the claims other than Claims 11 through 14? So on page 25 of our brief, we point out where Broussard was applied only through Claims 1 through 10. And so subsumed within the entire case, and as the petition presented to the Board, Broussard only applies through Claims 1 through 10. Okay, but just so for my housekeeping purposes, my understanding is that you also agree that you didn't dispute that a person of skill in the ARP would have been motivated to combine Broussard and Sanborn or Broussard and Cryer below during the IPR. Is that right? I think we... I'm not sure that's correct, Your Honor, but... Well, remember, your gray brief on page 13 acknowledges that your side did not explicitly contest that motivation to combine proposition by the petitioner, that the Board adopted. I won't disagree with you, Judge Chen. Okay, so I guess what I'm trying to figure out here is, at least for Claims 1 through 10 or for all claims in which Broussard was relied on with Sanborn and Cryer, we don't have to think too hard about the VFD limitation because what we have is no actual challenge below or no legitimate challenge that could be entertained here on appeal with respect to a combination of Broussard and Sanborn or Broussard and Cryer. Is that fair to say? Judge Chen, what I'll say is we'll rest on our briefs on that. And for the time today, I'd really like to focus on Claims 11 through 14 for the positions that Halliburton presented with respect to the Cryer and Sanborn references and try to explain why we think, at least for those claims, the Board's decision doesn't rest on substantial evidence. So for the Broussard, we'll rest on our briefs. But for Claims 11 through 14, I'd like to focus on Cryer and Sanborn and explain at least why we believe that there's no substantial evidence to say that those references disclose a VFD that performs electric motor diagnostics. And if I could turn your attention to Appendix 363, and what we tried to do before the Board is respond to the petition as it was presented by Halliburton, respond to their specific arguments and address those. And also respond to the basis for the Board's decision on obviousness with respect to Sanborn and Cryer. So on Appendix 362 to 363, we have paragraphs 161 and 162 of the Durham Declaration, and that's Halliburton's expert. And those two paragraphs are the only evidence trying to explain why Sanborn discloses a VFD with electric motor diagnostics. Now, paragraph 161 tries to argue that Sanborn expressly discloses a VFD with diagnostic capability. That is absolutely not supported by the record. Sanborn doesn't even discuss diagnostics. And just so everyone is clear and the Court's clear, a VFD is a completely separate component from an electric motor. And as Sanborn explains in the specification, the VFD has three functions. It modulates the frequency, it modulates the current, and it modulates the voltage. And that's how a VFD controls the speed of the motor. And that goes to the first function of our claimed VFD element. But there's no place describing a diagnostic capability of the VFD. And that's a completely separate component or function. And then when you look at paragraph 162 of the Durham Declaration, and this is where the error propagated through the case. It's a conflation between controlling speed and diagnostics. And so at the top of page 363, Mr. Durham opines, it would have been obvious to use the VFD to control speed of the motor, and by extension, the pump powered by the motor. We don't dispute that. But then this is where the error is, to prevent damages from overspeed and to save wear and tear on the motor pump. But that is not a diagnostic function or capability of the electric motor. That's doing the first function of our claimed VFD. And so it can't simply be that Dr. Durham mixes the two functions and then says, out of thin air, I'm going to declare that controlling the speed is the same as performing a diagnostic function, even though our claim limitation requires two separate functions. And that's the premise of our argument and our position. It's been the same throughout the board, throughout the proceeding below, on appeal. And there's no place in this record where there's any evidence of a VFD that performs a diagnostic function with respect to Cryer and Sanborn. Now, I could go through the same argument with respect to Cryer, but it's essentially the same testimony that Dr. Durham advanced. And ultimately, that's the basis of our position in terms of no substantial evidence. Now, an expert can't simply come in and mix up two claim limitations, assert that they're the same, and then say, oh, it would be obvious to do one and the other. There's no precedent from this court that would support such a holding. And that's why today I'm trying to explain why we think, at a minimum, there's no substantial evidence for claims 11 through 14. And on top of that, what the board's decision did not address is our expert's testimony. And this is at Appendix 2842 through 2848. And what our expert explained is, no, controlling the speed is not the same as performing a diagnostic function. And this goes back to basic electronics, right? The way a VFD works is essentially modulating the frequency of the current. It's a three-phase current, and it's going to transfer from the power into the motor. And it modulates the frequency. By modulating the frequency, it's controlling the speed of the motor. Now, there's a lot that can happen after that modulated frequency goes from the VFD to the motor that requires a separate aspect of diagnostics. And that's what our claimed invention is trying to get at. Now, Halliburton and the board never addressed this aspect of our claim. So we have our expert's testimony supporting our position. Another aspect of the error by Halliburton's expert, Durham, was on page 320, where there's some conflation between a VFD versus a VSD and versus an ASD. And we explained that in our brief. And I'm happy to answer any questions on that, Your Honors. And I could turn to Cryer, but Cryer is essentially the same position in terms of the lack of substantial evidence explaining that diagnostic function. So for example, so with Cryer, this is at appendix 446 and paragraphs 282 to 284, in his declaration. And it's essentially verbatim in terms of Halliburton's position of trying to conflate controlling the motor speed and performing diagnostics. There's another error associated with the board's reliance on Cryer and Halliburton's argument in that it misreads the prosecution history that Halliburton advanced. And I think this is a key point with respect to the Cryer reference. In the prosecution history of a related patent application, an examiner expressly concluded that the Cryer reference only discloses controlling the speed. Mr. Dunn, let me ask you something. The diagnostics comes in in claim 9, right? You're talking about claims 11 through 14? Yes, Your Honor. Were the diagnostics in claim 11 through 14? I'm sure I'm just missing it here. You have claim 8, and then claim 9 says the method of claim 8 further comprising controlling. And then 10 talks about diagnostics. I'm just trying to figure out. I'm obviously just missing something that I shouldn't miss, but I'm just trying to see where in 11 through 14 you have the diagnostic requirement. Your Honor, I could check on that. Let me look at that a little more closely, and I'll respond in rebuttal. But my understanding was that that was always the position in terms of the theory advanced in terms of why those claims were obvious as well. Okay. Well, that may be. You've been talking about 11 through 14, and I don't see anything about diagnostics in those particular claims. I'm probably missing some, but that'd be good if you could just... when you get back up or whatever. Thank you, Your Honor. And so, Your Honor, turning back to the Crier point, I think our ultimate point in terms of Crier was basically that the Crier and the Sanborn references were dealt the same way with respect to those claims. And if there are any further questions, I will reserve my time for rebuttal. Thank you. Okay. Thank you. Let's hear from the government. Mr. Amin. Good morning, Your Honors, and may it please the Court. The challenge patent here claims a collection of well-understood fracking and power distribution components. Do you know the answer to Judge Shull's question? There are certain claims in which Broussard was not relied upon as a ground for unpatentability. Is that because those claims don't recite the patent? Anything about a variable frequency drive that has to perform motor diagnostics? That's absolutely right, Your Honor. Claims 1 through 7 and 9 and 10 all recite a VFD. And for those claims, the petitioner applied Broussard in addition to the other grounds. Claims 8 and 11 to 14 do not require a VFD that performs diagnostics. And therefore, the petitioner did not apply Broussard to those claims. So diagnostics aren't involved in 11 through 14?  And so that's why Halburn put in his brief that if the Court agrees on the Broussard ground that the Broussard reference renders the VFD limitation obvious, that eliminates the VFD issue completely. Those are the only claims that recite a VFD. That would just result in maybe harmless error in terms of the understanding for the other prior references at most? At most, that's absolutely right. So the other ground, even if there was an error in those, and we stand behind all the Board's findings, but even if there was an error with respect to the other grounds, there would be a harmless error at most because Broussard, again, there's no dispute that Broussard teaches both claim functions separately and that the only argument that's been advanced on appeal with respect to Broussard, the appellant did not push before the Board. Maybe we wouldn't even have to address the other grounds, whether Cryer or Sanborn discloses the VFD limitation with respect to performing diagnostics, because if we were to affirm the Broussard, is that right? Absolutely right, Your Honor. So grounds one through five are essentially non-Broussard grounds, and then grounds six through ten are Broussard grounds. And so I think the Court could dispose of the VFD issue just by grounds six through ten. Okay. So I also heard arguments today on Sanborn by itself with respect to the VFD, and I'd like to briefly respond to that if I might. Sanborn doesn't... The premise of the argument that was before the Board wasn't that there was one function that Sanborn was performing, and that performs both controlling the speed and the diagnostic. Sanborn separately discloses controlling the frequency, which controls speed, and then controlling voltage or current, and that's what Dr. Durham pointed out as being the diagnostics. So there's no collapse in the functions with respect to the Sanborn reference. I think Sanborn by itself, I think, teaches the VFD limitations, but again, if there's any dispute there, I think Broussard teaches the VFD limitation. And since the VFD was the only issue that was addressed in the opening argument, I was not planning on touching on switchgear or secondary considerations, unless the Court has any particular questions for me. Okay, thank you very much. Thank you, Your Honors. All right. Thank you, Your Honors. Just one quick point. Judge Schall, our understanding was that the VFD limitation was at least inherently included in those claims 11 through 14, and to the extent that that's not the correct interpretation or the understanding of the Court, then we would agree that our position is misplaced. But again, our view of it was that that limitation was at least included as part of the claimed invention. In 11 through 14? Yes. Can I ask you, how is that given the language of Claim 10? Your Honor, I think that's—Claim 10 is a challenge for that position, but that's been our view of the case. Is there somewhere in your briefing where you explain this? We believe, even though it doesn't actually say VFD, it's inherently in there. Judge Chen, the closest we came was on page 25, where we pointed out— Of your blue brief? Yes, Your Honor. Okay. But again, it is specifically for just identifying that Broussard was the only limited to those claims.  There are no further questions. Thank you for your time. Okay, thank you. The case is submitted.